**Arlene NICHOLS and Vance Nichols, Plaintiffs,**

v.

**SURGITOOL, INC., Defendant.**

Civ. No. 74–62.

United States District Court, W. D. New York.

Aug. 30, 1976.

W. Donn McCarthy, Weaver, Maghran & McCarthy, Buffalo, N. Y., for defendant.

Mark Lillenstein, Delevan, N. Y., for plaintiffs.

MEMORANDUM and ORDER

ELFVIN, District Judge.

This action is now before the Court on defendant's motion to dismiss on the

ground that the State of New York lacks personal jurisdiction over the defendant, or in the alternative, that service of process upon the defendant was not made in compliance with Rule 4(d)(3) or Rule 4(d)(7) of the Federal Rules of Civil Procedure.

Defendant, a Pennsylvania corporation, alleges that this Court lacks in personam jurisdiction because the defendant was not doing business in New York and thus was not present in the State. In addition, defendant claims that service was made upon someone other than an officer, managing or general agent of the corporation, or in lieu thereof, was not made in the manner prescribed by the law of the State of New York.

Plaintiffs submit that. New York has long-arm jurisdiction pursuant to Sections 302(a)(1) and 302(a)(3) of New York's Civil Practice Law and Rules. Plaintiffs assert that service upon defendant corporation satisfied the minimum requirements to effectuate valid service because actual notice of the impending lawsuit was received by defendant.

It has been held that in a diversity action the amenability of a foreign corporation to suit in a federal court is determined in accordance with the law of the state where the court resides. *Arrowsmith v. United Press International*, 320 F.2d 219, 223 (2d Cir. 1963). Section 302(a)(1) of New York's Civil Practice Law and Rules provides that a court may exercise personal jurisdiction over any nondomiciliary who in person or through an agent transacts any business within the state. For jurisdiction to lie under this provision, the defendant must have engaged in purposeful activity within the state. *Longines-Wittnauer Watch Co. v. Barnes and Reinecke, Inc.*, 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965). In that case the activities within New York consisted of substantial preliminary negotiations, the execution of a supplementary contract, the shipment of two specially designed machines, and the supervision of the installation and testing of the machinery by defendant's employees. In another case, the court held that the solicitation and negotiation of a contract by a high-level officer of the corporate defendant who made three separate trips to New York over a period of two months was sufficiently extensive and purposeful to constitute the transaction of business. *Liquid Carriers Corp. v. American Marine Corp.*, 375 F.2d 951 (2d Cir. 1967). See also, *Harry Winston, Inc. v. Waldfogel*, 292 F.Supp. 473 (S.D.N.Y.1968).

On the other hand, it is well established that Section 302(a)(1) does not encompass within its jurisdictional reach a nondomiciliary who was never physically present in New York, but who merely solicited business by means of out-of-state mailings and thereafter shipped goods into the state. *Kramer v. Vogl*, 17 N.Y.2d 27, 267 N.Y.S.2d 900, 215 N.E.2d 159 (1966). A corporate defendant is deemed to have transacted business, however, when the shipment of goods results from solicitation within the state by a sales representative or agent. *Singer v. Walker*, 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965).

I am cognizant of the fact that the "transacts any business" basis for long-arm jurisdiction requires less contacts than the permanence and continuity requirements of the doing business test. *Simonson v. International Bank*, 14 N.Y.2d 281, 251 N.Y.S.2d 433, 200 N.E.2d 427 (1964). Notwithstanding this greater flexibility, I hold that defendant corporation did not transact business in New York within the meaning of CPLR § 302(a)(1). Defendant did not have an office or a telephone listing in the state, its employees or officers or agents did not enter the state and the defendant did not engage in the solicitation of business through any advertising medium or through dealers or representatives within New York. The defendant's advertisement in nationally distributed professional and trade journals, literature sent by defendant in response to inquiries and the display of its products at numerous conferences did not constitute the transaction of business within New York. The defendant did not make any in-state visit during which business was carried out.

■ Personal jurisdiction may also be independently obtained, however, under CPLR § 302(a)(3), which provides that a court may exercise in personam jurisdiction over a nondomiciliary who commits a tortious act outside New York which causes injury within the state, if he

"(i) regularly does or solicits business, or engages in other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

"(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce."

It should be noted at this point that the terminology "does * * * business" contained in this section of the long-arm statute is less stringent quantitatively than the doing business test of CPLR § 301. *Chunky Corporation v. Blumenthal Bros. Chocolate Co.*, 299 F.Supp. 110, 115 (S.D.N.Y.1969). Moreover, the mere solicitation of business on a regular basis subjects a defendant to in personam jurisdiction for a tortious injury in the state. See, McLaughlin, *Practice Commentaries,* CPLR § 302 (McKinney's 1972) at 88–89.

■ This Court has personal jurisdiction over the defendant corporation under CPLR § 302(a)(3)(i). The defendant's answers to plaintiff's interrogatories concerning its doing business reveal that it regularly did and solicited business in New York. Between April 1, 1963 and June 22, 1970, the defendant sold 1,088 surgical devices to purchasers in New York State with a dollar value of $259,935.70. The defendant advertised in professional and trade journals and mailed descriptive literature and clinical reprints to physicians and hospitals in New York in response to inquiries. Its products were displayed in various places throughout the country, including New York City. These promotional efforts were designed to achieve wide distribution of information calculated to promote the sales of its products on an interstate basis. In addition, defendant derived substantial revenue from the use of its products in the state. The determination of what constitutes substantial revenue requires a comparison of defendant's total gross sales revenue with the gross sales revenue attributed to New York sales. See *Chunky Corporation v. Blumenthal Bros. Chocolate Co., supra*, at 115. Therein it was held that revenue derived from sales to purchasers in New York amounting to 4% of total gross revenue was insufficient to amount to substantial revenue. The practice commentary accompanying the section suggests that, if a defendant derived 10% of its sales revenue from New York, it would be subject to personal jurisdiction pursuant to this section. See, McLaughlin, *Practice Commentaries,* CPLR § 302 (McKinney's 1972). In the instant case, defendant has derived over 7% of its gross sales revenue from sales to purchasers in New York. This is held by me to satisfy the substantial revenue requirement of CPLR § 302(a)(3)(i) because the aggregate dollar volume was not insignificant.

Even if personal jurisdiction could not be obtained pursuant to CPLR § 302(a)(3)(i), the same is properly predicated upon CPLR § 302(a)(3)(ii). The defendant corporation engaged in a course of conduct in which it expected or should have reasonably expected any tortious act by it to have consequences in the state. The test concerning this determination is objective, rather than subjective. The statutory requirement of foreseeability relates to forum consequences generally and does not require the defendant to foresee the specific New York consequences of its alleged tortious conduct. *Allen v. Auto Specialties Mfg. Co.*, 45 A.D.2d 331, 357 N.Y.S.2d 547, 550 (3rd Dept. 1974); see also, *Markham v. Gray*, 393 F.Supp. 163 (W.D.N.Y.1975). Defendant's wide dissemination of information and literature concerning its products, together with a substantial volume of sales in New York, made it foreseeable that defendant's alleged wrongdoing well could have consequences in this State.

The second statutory requirement, substantial revenue from interstate commerce, has been satisfied.

"The 'substantial revenue' provision of § 302(a)(3)(ii) is intended to extend the jurisdiction of New York courts to those defendants committing out-of-state tortious acts with repercussions in New York, who, because of the extent and non-local nature of their operations, can consistently with the requirements of fundamental fairness be expected to defend lawsuits in foreign forums." *Path Instruments Internat'l Corp. v. Asahi Optical Co.*, 312 F.Supp. 805, 810 (S.D.N.Y. 1970).

In the present case, the defendant corporation's gross sales between April 1, 1963 and June 22, 1970 totalled $3,700,810.93. Defendant's business was national in scope. Thus, jurisdiction is properly premised on CPLR § 302(a)(3)(ii).

With respect to defendant's assertion that valid service of process has not been effectuated, it should be noted initially that actual substituted service was promptly received by the defendant. It was adequately apprised that a lawsuit had been commenced against it and was afforded sufficient time to prepare its case. Defendant does not allege that it has suffered any prejudice.

■ Rule 4(d)(3) of the Federal Rules of Civil Procedure specifies that service of process upon a foreign corporation shall be made "by delivering a copy of the summons and complaint to an officer, a managing or general agent * * *". The requirements of the federal process rule should be liberally construed to effectuate service when, as here, the defendant has received actual notice of the impending action. *Rovinski v. Rowe*, 131 F.2d 687 (6th Cir. 1942). The Supreme Court has recognized that actual receipt of notice is a fact to be considered in the determination of whether valid service has been made. *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940); *Hanna v. Plumer*, 380 U.S. 460, 463 fn. 1, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965) (dictum). The defendant's immediate and actual notice of an action has been considered a significant fact and has been given substantial weight in ascertaining whether service has comported with the federal process rule. *Levin v. Ruby Trading Corporation*, 248 F.Supp. 537, 541 (S.D.N.Y.1965); *Courtesy Chevrolet, Inc. v. Tennessee Walking Horse Ass'n*, 344 F.2d 860, 866 (9th Cir. 1965); *Securities and Exchange Commission v. Briggs*, 234 F.Supp. 618, 623 (N.D.Ohio 1964).

The plaintiff places heavy reliance on *Koninklijke Luchtvaart Matt. v. Curtiss-Wright Corp.*, 17 F.R.D. 49 (S.D.N.Y.1955). In that case, conflicting testimony was presented as to whether the Marshal personally served an officer of the defendant corporation or whether the Marshal only handed the papers to a receptionist who subsequently delivered them to an officer of the corporation. The court accepted the Marshal's return and affidavit, which stated that he had personally served the officer in question, as a reliable and accurate description of what had occurred. Moreover, the court held that valid service of process was accomplished even if the Marshal had only delivered the summons and complaint to a receptionist who immediately had handed them to an officer of the defendant corporation. "Where the Marshal acts in a manner * * * which he can reasonably expect will result in delivery of the process to a person described in Rule 4(d)(3); and where his acts are effective in achieving delivery of the process to such a person, thereby giving the defendant notice that an action has been commenced against it; the service is sufficient." *Id.*, at 51.

■ The principal purpose of the service of process rule is to give the defendant notice that an action has been initiated against it. *Montclair Electronics, Inc. v. Electra/Midland Corp.*, 326 F.Supp. 839, 842 (S.D.N.Y.1971). "[S]ervice should be made upon a representative so integrated with the organization that he will know what to do with the papers. Generally, service is sufficient when made upon an individual who stands in such a position as to render it fair, reasonable and just to imply the authority on his part to receive service." *American Football League v. National Football League*, 27 F.R.D. 264, 269 (D.Md.

**64**

1961). In *Montclair*, when the Marshal visited the business offices of the defendant corporation he was informed that the vice president, general manager and operations manager were not on the premises. The Marshal was then directed to a Mr. Blatt, who was apparently in charge of the office at that time, and handed him a copy of the summons and complaint. On these facts, the court concluded that the Marshal reasonably expected Mr. Blatt to have the authority to accept service of process and held that the service was valid.

 In the present case, defendant's answers to plaintiff's interrogatories reveal how Surgitool, Inc. (hereinafter "Surgitool") was transformed into Surgitool, Artificial Organs Division, Travenol Laboratories, Inc. On June 22, 1970, Surgitool sold its assets to Travenol Laboratories, Inc. (hereinafter "Travenol"). The President, Treasurer and Sales Manager of Surgitool were retained by Travenol as its Division President, Director of Personnel, and Products and Service Manager respectively in its Artificial Organs Division. In addition, various hourly employees of Surgitool continued to be employed by Travenol in such division. Customers were notified of the change in corporate name and that products formerly made by Surgitool would be made by Travenol's Artificial Organs Division. Beginning in December, 1971, Surgitool's telephone listing was changed to Surgitool, Artificial Organs Division, Travenol Laboratories, Inc. Orders for medical protheses received by Surgitool after June 22, 1970 were forwarded to Travenol (specifically to its Artificial Organs Division) and checks thereafter received by Surgitool were endorsed to Travenol. Also, a sign near the entrance door to Travenol's Artificial Organs Division indicated the name Surgitool. Therefore, it was reasonable for the Marshal to serve the instant summons and complaint at the offices of Surgitool, Artificial Organs Division, Travenol Laboratories, Inc. rather than at the registered address of Surgitool Liquidating Company on file with the Pennsylvania Department of State.

Conflicting evidence is presented to this Court as to how exactly the Marshal effected service. The factual account described by the Marshal is accepted as a reliable and accurate recitation of what happened. See affidavit of George E. Mardis, U. S. Marshal. This Court finds that one James Garrity presented himself as being in charge of the office at the time because no officer was present and that he assured the Marshal that the papers would be immediately given to the Division President upon his return. Therefore, I hold that the Marshal acted with reasonable expectation that the said officer would be presented with the papers by Mr. Garrity and that the latter did in fact do so. Thus, the service of process was sufficient pursuant to Rule 4(d)(3) of the Federal Rules of Civil Procedure. Having so determined, it is unnecessary to rule whether the service of process was valid under the law of the State of New York.

Defendant's motion to dismiss is hereby denied.